IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02898-REB-KLM

NAKIKO DIALLO,

      Plaintiff,

v.

MATTHEW MILLIGAN, in his personal capacity, and
CITY OF AURORA,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATE MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Defendant Milligan's Motion to Dismiss** [#18][1] (the "Milligan Motion") and **Defendant City of Aurora's Motion to Dismiss** [#19] (the "Aurora Motion"). Plaintiff filed Responses [#26, #29] in opposition to the Motions, and Defendants each filed a separate Reply [#37, #36]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1©, the Motions have been referred to the undersigned for a recommendation regarding disposition. *See* [#20]. The Court has reviewed the pleading, the briefing, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Milligan Motion [#18] be **DENIED in part and GRANTED in part**, and further **RECOMMENDS** that the Aurora Motion [#19] be **DENIED in part and GRANTED in part**,

---

[1] "[#18]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). This convention is used throughout the Recommendation.

as outlined below.

## I. Background[2]

This action arises from allegations of serious police misconduct. *Am. Compl.* [#17] ¶ 1. Central to Plaintiff's claims is the allegation that Defendant Matthew T. Milligan ("Milligan") of the Aurora Police Department ("APD") planted drug evidence in Plaintiff's vehicle during a traffic stop in late 2016. *Id.* ¶¶ 3, 28. Plaintiff, who is an African-American man and resident of Denver, Colorado, was subsequently tried for Driving Under the Influence ("DUI") and Unlawful Possession of a Controlled Substance in a Colorado state court. *Id.* ¶¶ 1, 28-29. In April 2018, Plaintiff was acquitted of all criminal charges. *Id.* ¶ 3, 29.

Plaintiff now brings several constitutional claims against his arresting officer, Defendant Milligan. These include allegations that Defendant Milligan unlawfully arrested, searched, and prosecuted Plaintiff, as well manufactured false inculpatory evidence, in violation of the Fourth and Fourteenth Amendments. *Id.* ¶¶ 45-77. Plaintiff also raises a *Monell* claim against Defendant City of Aurora ("Aurora"), asserting municipal liability for the constitutional violations allegedly committed by its employee, Defendant Milligan. *Id.* ¶¶ 4, 68-85; *see generally Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). All claims are brought pursuant 42 U.S.C. § 1983. *Am. Compl.* [#17] ¶ 5.

At all times relevant to this lawsuit, Plaintiff resided or was incarcerated in the State of Colorado. *Id.* ¶ 7. Defendant Milligan is an active employee of the APD and was acting under color of law and within the scope of his duties while engaging in the actions that gave

---

[2] All well-pled facts from the Amended Complaint [#17] are accepted as true and viewed in the light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

rise to this suit.  *Id.* ¶ 8.  Defendant Aurora is and was at all times relevant to this action responsible for the supervision, training, customs, official policies, and actual practices of the APD and its employees.  *Id.* ¶ 9.

## A.  The Traffic Stop and Subsequent Arrest

Just before midnight on November 9, 2016, Plaintiff was driving in Aurora, Colorado when he was pulled over by police for a broken taillight.  *Id.* ¶ 21.  Defendant Milligan, at the time a thirteen-year veteran of the APD,[3] initiated the traffic stop, and APD dispatch subsequently directed two additional officers to the scene: Field Training Officer Jason Oviatt ("Oviatt") and his trainee, Officer Alex Sotelo ("Sotelo").  *Id.* ¶ 22.  Plaintiff's friends, who were driving ahead of him in a separate car, witnessed the traffic stop and remained in the vicinity while the following events unfolded.  *Id.*

During his initial encounter with Plaintiff, Defendant Milligan noticed an empty beer can in the back seat of the car and asked Plaintiff if he had been drinking.  *Id.* ¶ 23.  Plaintiff told Defendant Milligan that he had not been and explained that the empty can was from much earlier in the day.  *Id.*  Nevertheless, Defendant Milligan ordered Plaintiff to exit the vehicle, conducted a search of his person, and told him to sit on the curb while he ran his paperwork.  *Id.*

In the meantime, Officers Oviatt and Sotelo arrived on the scene, and Officer Sotelo subsequently observed a half-empty bottle of tequila in the passenger compartment of the car.  *Id.* ¶ 24.  When he informed Defendant Milligan of his discovery, the latter allegedly

---

[3] Plaintiff alleges that Defendant Milligan has been a police officer for the APD since at least 2003 but admits that he does not have knowledge of his actual start date with the APD or of any prior employment or training.  *Am. Compl.* [#17] ¶ 10.

responded by telling the trainee: "We need to search this car essentially." *Id.* Defendant Milligan and Officer Sotelo then returned to the sidewalk and engaged with Plaintiff. *Id.* ¶ 25.

Body camera footage taken from Defendant Milligan's person captured the two officers speaking with Plaintiff. *Id.* According to the allegations, Plaintiff appears to have clear eyes and coherent, enunciated speech during this and all subsequent interactions. *Id.* Plaintiff nevertheless consented to a roadside sobriety test conducted by Officer Sotelo, which was also captured on film. *Id.* According to the Amended Complaint [#17], Plaintiff appeared objectively sober in this video, yet he was still arrested for DUI by Defendant Milligan. *Id.* ¶¶ 25-26.

At this point, Plaintiff's friends approached Defendant Milligan to ask why their friend was being arrested and whether they could assume possession of his car. *Id.* ¶ 26. However, despite an APD policy that expressly allows for such a transfer of possession, Defendant Milligan allegedly refused to explore this option and instead opted to impound the vehicle. *Id.* Defendant Milligan subsequently sought Plaintiff's consent to conduct an inventory search of the vehicle, but Plaintiff refused. *Id.* ¶ 27. Defendant Milligan then proceeded with the search nevertheless. *Id.*

Body camera footage shows Defendant Milligan conducting this search. *Id.* Specifically, it shows Defendant Milligan searching through an insulated lunchbox that was found in the backseat of Plaintiff's vehicle. *Id.* However, just as Defendant Milligan was opening the top zippered compartment of the lunchbox, the body camera was deactivated and the video footage cut off. *Id.* However, according to the Amended Complaint [#17], the footage nevertheless clearly shows that the zippered compartment was empty prior to

the camera's deactivation.  *Id.*

After a lapse of time, Defendant Milligan's camera came back on, and he is seen instructing Officer Sotelo to search this same lunchbox.  *Id.*  Officer Sotelo's body camera footage shows him opening the same zippered compartment that Defendant Milligan opened just before his camera was deactivated; this time, however, Officer Sotelo discovered a bag of cocaine, a digital scale, and other drug paraphernalia readily visible inside the compartment.  *Id.*  Plaintiff alleges that, upon information and belief, Defendant Milligan placed the cocaine and other contraband in Plaintiff's lunchbox while his body camera was deactivated.  *Id.* ¶ 28.

According to Plaintiff, Defendant Milligan has repeatedly changed his story with respect to the drug evidence.  *Am. Compl.* [#17] ¶ 64.  Initially, Defendant Milligan asserted that he did not search the lunchbox prior to Officer Sotelo; however, in light of the body camera footage, Defendant Milligan later claimed he had deliberately left the evidence in the lunchbox as a sort of training exercise for Officer Sotelo.  *Id.*  Regardless, Plaintiff was charged with DUI and Unlawful Possession of a Controlled Substance with Intent to Distribute and was taken into custody.  *Id.* ¶ 28.

Because Plaintiff was on parole at the time he was arrested, he was prevented from posting bond.  *Id.* ¶ 29.  Thus, Plaintiff was required to remain in custody for the entire pendency of these charges—a total of over seventeen months.  *Id.*

**B.**     **The Criminal Trial**

In his Motion to Dismiss [#18], Defendant Milligan relies on several official court documents from Plaintiff's criminal proceedings to support his argument that the instant

claims should be dismissed.[4] These documents include four interlocutory motions filed by Plaintiff and transcripts of the three evidentiary hearings held on those motions. *See Exs. A-G of Milligan Motion* [#18-1-#18-7].

The presiding Colorado district court judge, the Honorable Patricia Herron, ruled from the bench on June 8, 2018, following final oral arguments from counsel. *See Ex. G of Milligan Motion* [#18-7] ("June 8 Hearing") at 1, 54-59. At that hearing, the court held that any issues regarding Defendant Milligan's credibility were insufficient for the court to find, as a matter of law, that he lacked probable cause for his actions, and should therefore go to the jury. *Id.* at 56. Thus, the court found there was sufficient probable cause for the DUI arrest, "or at least suspicion of DUI." *Id.*

Additionally, because probable cause existed for the initial arrest, the state court found that an inventory search was, given the totality of the circumstances, proper. *Id.* at 57. The court left the issue regarding whether Defendant Milligan's actions went beyond the lawful parameters of an inventory search up to the jury. *Id.* at 58-59.

The state court never directly addressed Plaintiff's motion seeking dismissal based

---

[4] When considering a motion to dismiss, the Court must usually disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *See Jackson v. Integra, Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). In certain instances, however, the Court may consider documents outside of the complaint which are pertinent to ruling on a motion to dismiss. *See Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). The Court may consider three types of documents relevant to a motion to dismiss without converting it to a motion for summary judgment. First, a court can take judicial notice of "documents and docket materials filed in other courts." *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014). Second, a court may consider documents that are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, if a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Because the referenced documents are docket materials filed in another court and are matters of public record, the Court's consideration of them here is proper.

on outrageous government conduct, wherein he alleged Defendant Milligan planted cocaine in his lunchbox.  *Id.* at 59; *Ex. A of Milligan Motion* [#18-1] ("Outrageous Conduct Motion"). The court, while admitting that it thought it was "bad practice, and . . . in  direct contradiction to Aurora's policy to turn those body cams on and off[,]" nevertheless found that these facts created potential credibility issues and were therefore properly left to the jury to consider.  *June 8 Hearing* [#18-1] at 59.

The case was eventually tried before a jury in April 2018. *Am. Compl.* [#17] ¶ 29. Plaintiff was found not guilty of all criminal charges.  *Id.*

## C.    The Current Lawsuit

The instant Complaint against Defendants Milligan and Aurora was filed in November 2018.  *See Compl.* [#1].  In his Amended Complaint [#17], Plaintiff raises five separate claims for relief against one or both Defendants:

> (1) Unlawful Search and Detention by Defendant Milligan in Violation of the Fourth Amendment;
> (2) Malicious Prosecution by Defendant Milligan in Violation of the Fourth and Fourteenth Amendments;
> (3) Manufacturing False Inculpatory Evidence by Defendant Milligan in Violation of the Fourteenth Amendment;
> (4) Racially Biased Policing by both Defendant Milligan and Defendant Aurora in Violation of the Fourteenth Amendment; and
> (5) Deliberately Indifferent Training, Supervision, and Discipline by Defendant Aurora Resulting in Constitutional Violations.

*Id.* ¶¶ 45-85.  All claims against Defendant Milligan are brought against him in his individual capacity.  *Id.*

Defendants move to dismiss all claims against them pursuant to Rule 12(b)(6).  *See Milligan Motion* [#18]; *Aurora Motion* [#19].  Defendant Milligan argues that Claims One, Two, and Three necessarily fail because one or more elements required to establish each

claim were previously decided in Defendant Milligan's favor and are precluded from relitigation here under Colorado's doctrine of collateral estoppel. *Milligan Motion* [#18] at 2. Specifically, Defendant Milligan asserts that the following determinations were made by the state court and are therefore precluded here: (1) Defendant Milligan had probable cause to arrest Plaintiff for DUI; (2) the inventory search of Plaintiff's vehicle was legal; (3) Defendant Milligan had probable cause to charge Plaintiff for both the DUI and narcotics offenses; and (4) Defendant Milligan did not plant drug evidence in Plaintiff's vehicle. *Id.* at 8, 13-14. If Defendant Milligan's interpretations of the state court's rulings on these issues are given preclusive effect, as he asserts, then he argues Plaintiff's first three claims must be dismissed as a matter of law. *Id.* at 10, 13, 14. Defendant Milligan further argues that Claim Four should be dismissed because Plaintiff fails to provide a sufficient factual basis for his claim. *Id.*

Defendant Aurora, meanwhile, argues that the two municipal liability claims against it (Claims Four and Five) should be dismissed because Plaintiff has failed to sufficiently allege either element required to bring a *Monell* claim. *Aurora Motion* [#19] at 3; *see Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010); *Monell*, 436 U.S. at 691. Specifically, Defendant Aurora argues that (1) Plaintiff has failed to sufficiently plead any of the alleged constitutional violations by Defendant Milligan; and that (2) Plaintiff has failed to show the existence of a municipal "policy" or "custom" that caused his purported injuries. *Aurora Motion* [#19] at 3.

## II. Standard of Review

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340

(10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit Court of Appeals has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v.*

*Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

## III. Analysis

### A. Claim One: Unlawful Search and Detention

In his Amended Complaint [#17], Plaintiff concedes that Defendant Milligan had probable cause to stop and investigate Plaintiff regarding a possible DUI, but argues that any probable cause to arrest him dissipated once Plaintiff successfully completed a field sobriety test. *Am. Compl.* [#17] ¶ 48. Because of this alleged lack of probable cause, Plaintiff claims that his arrest, as well as the subsequent search of his vehicle, violated his rights under the Fourth Amendment. *Id.* ¶ 49. Therefore, on its face, Plaintiff's first claim for relief alleges two separate constitutional violations: (1) an unlawful detention, or false imprisonment, by Defendant Milligan in violation of the Fourth Amendment; and (2) an unlawful search conducted by Defendant Milligan in violation of the Fourth Amendment. *See id.*

Defendant Milligan asserts that the state court's determination that he had probable cause is binding here and, because a false imprisonment claim cannot stand if there was probable cause for the initial arrest, Plaintiff's claim therefore fails as a matter of law. *Milligan Motion* [#18] at 10; *see Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff.").

Defendant Milligan further asserts that because "an inventory search [of an arrestee's vehicle] is a well-defined exception to the warrant requirement of the Fourth Amendment," the state court's finding on probable cause necessarily defeats the unlawful search claim as well. *Milligan Motion* [#18] at 12; *see United States v. Killblane*, 662 F. App'x 615, 617 (10th Cir. 2016). Alternatively, Defendant Milligan asserts that the state court's ruling that the search was legal should be afforded preclusive effect here regardless of any other ruling. *Milligan Motion* [#18] at 12.

Collateral estoppel, or issue preclusion, is "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine is intended to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.*

When considering whether collateral estoppel applies, the Court must first determine whether federal or state law controls. *Murdock v. Ute Indian Tribe*, 975 F.2d 683, 687 (10th Cir. 1992). With the enactment of the Full Faith and Credit Act, "Congress [ ] specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen*, 449 U.S. at 96; 28 U.S.C. § 1738. Here, because the initial criminal proceeding took place in a Colorado state court, Colorado law controls. *See Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991).

Under Colorado law, collateral estoppel bars relitigation of an issue if the following four elements are met:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding;
> (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding;
> (3) There was a final judgment on the merits in the prior proceeding; and
> (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999). The burden of establishing these elements rests with the party seeking preclusion. *Id.* at 85.

Defendant Milligan asserts that in regard to the state court's finding that probable cause existed for the DUI arrest, all four elements are satisfied. *See Milligan Motion* [#18] at 10-12. In his Response [#26], Plaintiff offers a litany of reasons, many of them persuasive, why Defendant Milligan has failed to meet his burden. The Court, however, need only address one to determine that the claim should survive, i.e., Plaintiff's assertion that he did not have a "full and fair opportunity to litigate" the issues underlying the state court's interlocutory rulings because his ultimate acquittal deprived him of an opportunity to appeal those rulings. *See Response* [#26] at 8, 10-11.

The Tenth Circuit has held that under Colorado law the opportunity to appeal a state court's decision is required in order to show that a party had a "full and fair opportunity to litigate" that decision. *See Dixon*, 922 F.2d at 1459; *but cf. Hubbert v. Moore*, 923 F.2d 769, 773 (10th Cir. 1991) (finding that under Oklahoma law, a subsequent acquittal does not bar the use of collateral estoppel where "no genuine issue of material fact remains because probable cause was fully and fairly litigated in the prior criminal proceeding"). In *Dixon v. Richer*, the court explained that before a final judgment is rendered in a criminal

case, all interlocutory appeals are improper, and that after an acquittal, all potential appeals are rendered moot.  922 F.2d at 1459.  Therefore, the court held that a Colorado court's denial of a pretrial motion to suppress did not preclude relitigation on whether there was probable cause for the arrest in the subsequent civil rights action because the plaintiff was acquitted of all criminal charges and therefore could not appeal the decision.  *Id.*

A number of courts outside the Tenth Circuit have applied similar reasoning, holding that the inability to appeal an interlocutory decision following an acquittal means that the winning party has not been provided a full and fair opportunity to litigate the issues underlying that decision and, as a result, issue preclusion should not be applied.  *See Fletcher*, 68 F.3d at 1458 ("Under New York law, a party has not had a full and fair opportunity to litigate an issue if it has had no opportunity to appeal the adverse finding."); *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989) ("As our court has recognized on prior occasions, a 'full and fair opportunity to litigate' includes the right to appeal an adverse decision."), *cert. denied*, 494 U.S. 1029 (1990); *Block v. United States Int'l Trade Comm'n*, 777 F.2d 1568, 1572 (Fed. Cir. 1985) (concluding that an order is not preclusive when "there has been no opportunity for appellate review"); *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) ("[W]e are convinced that the Government did not have a 'full and fair opportunity to litigate' its claim because it could not appeal the interlocutory memorandum.").

Turning to the instant matter, the Court finds that Plaintiff did not have a full and fair opportunity to litigate the issues of probable cause or the legality of the search because he was never afforded an opportunity to appeal the state court's interlocutory decisions regarding those issues.  *See Dixon*, 922 F.2d at 1459.  Regardless of the extent to which

the issues were actually litigated, Plaintiff's ultimate acquittal rendered any appeal regarding the disposition of those issues moot and thus necessarily prevents the Court from attaching any preclusive effect to the state court's decisions. Defendant Milligan, therefore, has failed to sufficiently demonstrate the fourth element of Colorado's collateral estoppel doctrine.

Accordingly, the Court recommends that Defendant Milligan's Motion [#18] be **denied** to the extent it seeks dismissal of Plaintiff's first claim—Unlawful Search and Detention in Violation of the Fourth Amendment—on the basis of collateral estoppel.

## B.    Claim Two: Malicious Prosecution

Defendant Milligan seeks dismissal of Plaintiff's Malicious Prosecution claim on the grounds that (1) the state court's finding that he had probable cause for the arrest, if precluded from relitigation, necessarily defeats the claim; and (2) the state court's denial of Plaintiff's Outrageous Conduct Motion, which alleged the same misconduct by Defendant Milligan as the present claim, has already established that Defendant Milligan did not cause Plaintiff's continued confinement or prosecution and should bar relitigation of the issue here. *Milligan Motion* [#18] at 12-13; *see Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (explaining that in order to establish a § 1983 Malicious Prosecution claim, a plaintiff must establish five elements, including "the defendant caused the plaintiff's continued confinement or prosecution" and "no probable cause supported the original arrest, continued confinement, or prosecution").

The Court has already rejected Defendant Milligan's argument regarding the prior finding of probable cause, however, and therefore accepts as true Plaintiff's allegation that

Defendant Milligan lacked probable cause for the DUI arrest. *See supra* Section III.A. As for Defendant Milligan's second argument, the Court applies the same reasoning used in Section III.A. Thus, regardless of the conclusions Defendant Milligan draws from the state court's implicit denial of Plaintiff's Outrageous Conduct Motion, the Court finds that Colorado's collateral estoppel doctrine does not bar relitigation of any of those underlying issues because Plaintiff's inability to appeal the state court's preliminary decision necessarily means he did not have a full and fair opportunity to litigate the issues.

Accordingly, the Court recommends that Defendant Milligan's Motion [#18] be **denied** to the extent it seeks dismissal of Plaintiff's second claim—Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments—on the basis of collateral estoppel.

## C.    Claim Three: Manufacturing False Inculpatory Evidence

Plaintiff's third claim for relief rests on the allegation that "Defendant Milligan manufactured false inculpatory evidence against [Plaintiff] by knowingly, intentionally, and wilfully placing illegal contraband in [Plaintiff]'s lunchbox and leaving it for Officer Sotelo to 'find.'" *Am. Compl.* [#17] ¶ 63. Defendant Milligan seeks to dismiss this claim by relying on the same argument he raises regarding Plaintiff's Malicious Prosecution claim—namely, that by implicitly denying Plaintiff's pretrial Outrageous Conduct Motion, the state court conclusively found that Defendant Milligan did not manufacture false inculpatory evidence and that, under Colorado's collateral estoppel doctrine, this decision should bar relitigation of that issue here. *Milligan Motion* [#18] at 14. Thus, the Court applies the same reasoning used in Section III.A. and finds that the issue is not barred from relitigation here because Plaintiff's inability to appeal the state court's preliminary decision necessarily means he did

not have a full and fair opportunity to litigate the issue.

Accordingly, the Court recommends that Defendant Milligan's Motion [#18] be **denied** to the extent it seeks dismissal of Plaintiff's third claim—Manufacturing False Inculpatory Evidence in Violation of the Fourteenth Amendment—on the basis of collateral estoppel.

## D.   Claim Four: Racially Biased Policing

In his fourth claim for relief, Plaintiff alleges that Defendant Milligan's "unlawful detention, search, and arrest of [Plaintiff] was motivated by [Plaintiff]'s race and he treated [Plaintiff] less favorably than he would have treated a similarly situated White suspect." *Am. Compl.* [#17] ¶ 75.  Accordingly, Plaintiff brings a selective enforcement claim against Defendant Milligan in his individual capacity, as well a *Monell* claim against Defendant Aurora asserting municipal liability for Defendant Milligan's actions.  *Id.* ¶ 69.  The Court, therefore, first considers whether Plaintiff has sufficiently pled his claim that Defendant Milligan violated his rights—a necessary element for establishing municipal liability—before turning to his *Monell* claim against Defendant Aurora.  *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993); *Monell*, 436 U.S. at 694.

### 1.   Defendant Milligan

In his Amended Complaint, Plaintiff alleges no direct evidence of Defendant Milligan's racial motivations during the events in question; rather, he seeks to infer this unlawful motivation by asserting that "Defendant Milligan has a history of egregious, actionable misconduct towards people of color[.]" *Am. Compl.* [#17] ¶ 75.

As factual support for this assertion, Plaintiff alleges several prior incidents of

misconduct by Defendant Milligan specifically. These include: (1) his transfer from the APD narcotics unit "due to misuse of narcotics;" (2) his inclusion in a 2006 suit by an African-American man alleging excessive force, illegal search and seizure, and falsification of evidence during a traffic stop; (3) his inclusion in a 2009 suit by an African-American man alleging excessive force and unlawful search and seizure after being pulled over for failure to use a turn signal; (4) his role in the alleged mistreatment and malicious prosecution of an African-American woman in 2014; and (5) his role in the alleged mistreatment and malicious prosecution of two additional African-American women in 2015. *Id.* ¶¶ 13-15, 17-19. According to the Amended Complaint [#17], Defendant Milligan was not disciplined for any of these alleged transgressions. *Id.* ¶¶ 16-17.[5]

The Tenth Circuit recognizes that, in the civil context, "claims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause [of the Fourteenth Amendment], and that the right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003). Like any other equal protection claim, a plaintiff asserting selective enforcement of the laws "must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Id.* at 1168 ("The requirements for a claim of racially selective

---

[5] Moreover, Plaintiff alleges additional incidents where Defendant Milligan acted violently outside of his official duties. These include: (1) allegations that he beat and later stalked his former wife, which ultimately resulted in a 2010 request for a Protection Order against Defendant Milligan; (2) allegations that he severely assaulted a man in 2012 to resolve a financial dispute between the man and Defendant Milligan's girlfriend; and (3) allegations that he beat his girlfriend, which resulted in a 2012 arrest and subsequent guilty plea for domestic violence. *Id.* ¶ 12. However, the Court notes that there are no allegations in the Amended Complaint [#17] regarding the race of these individuals.

law enforcement draw on what the Supreme Court has called 'ordinary equal protection standards.'" (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996))). In order to establish such a claim, a plaintiff must show that the alleged discriminatory purpose was at the very least a motivating factor in the decision. *Id.* (citing *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996)).

The bar for establishing such a claim, however, is high. The Tenth Circuit, while recognizing that the "unequal application of criminal law to white and black persons was one of the central evils addressed by the framers of the Fourteenth Amendment[,]" has held that law enforcement "should not lightly be put to the expense and risk of trial on charges of racial discrimination that may be easy to make and difficult to disprove." *Marshall*, 345 F.3d at 1167. As with claims involving prosecutors, whose conduct the Supreme Court has said is presumed not to violate the Equal Protection Clause absent "clear evidence to the contrary," claims of racially discriminatory traffic stops and arrests must overcome a similar presumption that the officer's actions were constitutional. *Id.* (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)); *Armstrong*, 517 U.S. at 464; *see also Whren v. United States*, 517 U.S. 806, 811 (1996) (explaining that the Court rejects "the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause").

There are two methods of proving racially selective law enforcement by an officer: (1) direct evidence of the officer's discriminatory behavior during the events in question; and (2) using statistical comparisons to draw an inference that a particular law enforcement action was motivated by a discriminatory purpose. *Marshall*, 345 F.3d at 1167. In *Marshall v. Columbia Lea Regional Hospital*, the Tenth Circuit held that an "officer's pattern of traffic

stops and arrests, his questions and statements to the person involved, and other relevant circumstances may support an inference of discriminatory purpose[.]"  345 F.3d at 1168. The court pointed to the following evidence as potentially sufficient to infer a discriminatory purpose: that the plaintiff did not commit the traffic violation for which he was initially stopped; that the officer ascertained the plaintiff's race before initiating the stop; that he made repeated accusations that the plaintiff was on crack cocaine with no apparent basis; that he made an apparently unnecessary note of the plaintiff's race in his report of the incident; that his account of the events changed dramatically between the date of the incident and the date of his affidavit; and that there was "extensive alleged misconduct by [the officer] during his prior employment [at another police department]."  *Id.* at 1170.

Absent direct evidence of discriminatory behavior, a plaintiff must rely on statistics alone to show discriminatory purpose. Any statistical evidence used to infer discriminatory intent, however, "requires reliable comparison data."  *Blackwell v. Strain*, 496 F. App'x 836, 840 (10th Cir. 2012).  Such data, in order to be useful, should include "a reliable measure of the demographics of the relevant population, a means of telling whether the data represent similarly situated individuals, and a point of comparison to the actual incidence of crime among different racial or ethnic segments of the population."  *Id.*  Thus, "proving intent in this context is a high bar, and cases in which this bar is met are rare."[6]  *Id.* at 843;

---

[6] Examples where statistical evidence proved sufficient include *Gomillion v. Lightfoot*, 364 U.S. 339 (1960), and *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). In *Gomillion*, the Court held a state legislature violated the Fifteenth Amendment when it altered a city's boundaries "from a square to an uncouth twenty-eight-sided figure," thereby excluding 395 of 400 black voters without excluding a single white voter.  364 U.S. at 340-41.  In *Yick Wo*, an ordinance required laundry operators to obtain a permit, and all but one of the white applicants received permits while none of the over 200 Chinese applicants received permits.  118 U.S. at 373-74.  However, "[a]bsent a pattern as stark as that in *Gomillion* or *Yick Wo*, impact alone is not determinative, and [courts] must look to other evidence."  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. at 252, 266 (1977)

*see also McCleskey v. Kemp*, 481 U.S. 279, 293, 293 n.12 (1987) (explaining that while the Court "has accepted statistics as proof of intent to discriminate in certain limited contexts," only in "rare cases [has] a statistical pattern of discriminatory impact demonstrated a constitutional violation").

Applying these standards to the present case, the Court finds that Plaintiff has not sufficiently pled his claim that Defendant Milligan's actions violated the Fourteenth Amendment. While the Court notes that Plaintiff alleges extensive prior misconduct by Defendant Milligan, as well as a dramatic change in his account of the events from the date of the incident to the subsequent criminal proceedings, the comparisons to *Marshall* end there. Specifically, Plaintiff does not allege that he was pulled over pretextually, nor that Defendant Milligan exhibited any racially discriminatory behavior during the events in question. Rather, Plaintiff asserts that Defendant Milligan's alleged discrimination is just the latest example in a "pattern of traffic stops and arrests" that, Plaintiff avers, is indicative of Defendant Milligan's racial animus. *Am. Compl.* [#17] ¶ 75; *see Marshall*, 345 F.3d at 1168. However, providing examples of prior misconduct toward African-Americans without any point of comparison to similarly situated white suspects is insufficient for the Court to infer that Defendant Milligan was motivated by racial animus during the events in question. *See Blackwell*, 496 F. App'x at 841 (explaining that evidence showing that a high percentage of the defendant officer's arrests were carried out against black drivers "proves nothing [about his racial animus] because there is no reliable measure of the demographics of the relevant population, no means of telling whether the data represent similarly situated

_____

(footnote omitted).

individuals, and no point of comparison to the actual incidence of crime among different racial segments of the population").

Accordingly, the Court recommends that Defendant Milligan's Motion [#18] be **granted in part**, and Plaintiff's selective enforcement claim against him be **dismissed without prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should only attach to a dismissal when plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

### 2.    Defendant Aurora

Plaintiff also brings a *Monell* claim against Defendant Aurora, asserting that the city is liable for the harm caused by Defendant Milligan's alleged constitutional violations.  *Am. Compl.* ¶¶ 71-77; *see generally Monell*, 436 U.S. 658.

In order to establish municipal liability under *Monell*, a plaintiff must show (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.  *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004); *Bryson*, 627 F.3d at 788; *see also Monell*, 436 U.S. at 691 ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").   Thus, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Bd. of Cty. Comm'rs*

*of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 405 (1997).

Here, however, Plaintiff has failed to sufficiently allege that Defendant Milligan committed a constitutional violation as a result of racial animus. *See supra* Section III.D.1. Thus, Plaintiff fails to meet the first element of a *Monell* claim regarding racially biased policing. *See Am. Compl.* [#17] ¶ 73. Therefore, Plaintiff's *Monell* claim against Defendant Aurora, as it relates to Defendant Milligan's alleged selective enforcement of the laws, fails as a matter of law. *See Hinton*, 997 F.2d at 782; *Bryson*, 627 F.3d at 788; *Monell*, 436 U.S. at 694.

Accordingly, the Court recommends that Defendant Aurora's Motion [#19] be **granted in part**, and Plaintiff's *Monell* claim against the city for racially biased policing be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

E.      **Claim Five: Deliberately Indifferent Training, Supervision, and Discipline**

In his fifth and final claim for relief, Plaintiff raises a second *Monell* claim, asserting that Defendant Aurora is liable for the harm caused by Defendant Milligan's constitutional violations against Plaintiff, as detailed in Claims One, Two, and Three. *Am Compl.* [#17] ¶¶ 78-85. Specifically, Plaintiff avers that Defendant Milligan's conduct was the result of the municipality's "deliberate[ ] indifferen[ce] towards proper and Constitutionally sufficient training, supervision, and discipline of its police officers regarding investigation, use of force, collection of evidence, conduct during judicial proceedings, and other police procedures." *Id.* ¶¶ 82-83.

As noted above, *see supra* Section III.D.2., in order to establish municipal liability under *Monell*, a plaintiff must show that (1) a municipal employee committed a

constitutional violation; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron*, 392 F.3d at 419. The Court, therefore, considers each element in turn.

### 1. Constitutional Violations

Defendant Aurora correctly states that a municipality will not be held liable under *Monell* where there is no underlying constitutional violation by any of its officers, but it fails to offer any original argument why the Court should find that Plaintiff has not sufficiently pled such violations. *Aurora Motion* [#19] at 3; *see Jiron*, 392 F.3d at 419. Rather, Defendant Aurora simply directs the Court's attention to the arguments raised in the Milligan Motion [#18]. *Aurora Motion* [#19] at 3.

Defendant Milligan, however, failed to present any compelling arguments why Plaintiff's first three constitutional claims should be dismissed. *See supra* Sections III.A.-C. Defendant Milligan's sole argument against these claims—namely an affirmative defense that the doctrine of collateral estoppel barred relitigation of certain issues already decided in his favor—has been rejected by the Court. *See supra* Section III.A.1. And because Defendant Milligan has failed to offer any alternative argument why Plaintiff's claims should be dismissed, such as qualified immunity, for example, Plaintiff's first three claims remain active. *See Lebahn v. Owens*, 813 F.3d 1300, 1307-08 (10th Cir. 2016) (explaining that the district court has no obligation to sua sponte construct an argument that a party failed to raise on his own behalf). Therefore, the Court will not recommend dismissal of Claim Five on the basis of failure to sufficiently plead the first element of a *Monell* claim.

### 2. Municipal Policy or Custom

A municipal policy or custom may be based on any of the following: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.  *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188-89 (10th Cir. 2010).

While Plaintiff argues several of these theories, the Court need only address one to determine that the *Monell* claim should survive, i.e., Plaintiff's theory regarding deliberately indifferent training, supervision, and discipline.  A municipality's failure to adequately train, supervise, or discipline employees can be used to establish municipal liability if "that failure results from deliberate indifference to the injuries that may be caused." *Bryson*, 627 F.3d at 788 (internal quotation marks omitted); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  This standard is met if a "municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm."  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (internal quotation marks omitted).

### a. Notice

A plaintiff may establish a municipality's constructive notice by demonstrating either "a pattern of tortious conduct" or that the municipality's act or omission will result in a

"highly predictable or plainly obvious" violation. *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003). In *Estate of Valverde by and through Padilla v. Dodge*, the district court found that, for the purposes of a 12(b)(6) motion, the plaintiff's "conclusory statement" that the Denver Police Department had an informal policy of using deadly force, coupled with three specific examples of officers using such force, was sufficient to state a plausible *Monell* claim under either an informal policy or failure to train theory of municipal liability. No. 16-cv-1703-MSK-MEH, 2017 WL 3530282, at *4 (D. Colo. Aug. 17, 2017). The court noted that the outcome of any of the alleged lawsuits was not relevant to the motion to dismiss, and that examples of similar alleged conduct constituted specific factual support for the plaintiff's assertion. *Id.* ("Remembering that the focus of the Motion to Dismiss is on the sufficiency of the allegations to state a claim, the Court reads the conclusory statement together with the examples, treating the specific examples as true.").

To support his claim in the present case, Plaintiff lists eight prior incidents involving alleged misconduct by APD officers that allegedly went unpunished,[7] arguing that Defendant Aurora's alleged failure to train, supervise, or discipline these officers demonstrates deliberate indifference toward the high likelihood that future violations will result. The Court, applying the same reasoning as in *Valverde*, finds that Plaintiff's conclusory allegation, taken together with the eight examples he provides as factual support, sufficiently demonstrates that Defendant Aurora has constructive notice that its

---

[7] The eight prior incidents of alleged misconduct by APD officers occurred between 2008 and 2017. *Am. Compl.* [#17] ¶¶ 36-43. In all of these cases, the criminal charges were dismissed against the arrestee, and in several of them, the arrestee subsequently brought a civil rights action against the officers. *Id.* While many of these cases resulted in a settlement, none of them resulted in an adjudication of liability on the part of the officer or the city. *Id.*

failure to discipline these officers is likely to result in significant harm to the public.

Plaintiff further alleges in his Amended Complaint [#17] that "Defendant Milligan is known within the [Aurora] Police Department for violence, both in the course of his official duties and in his personal life[,]" and that these "documented instances of [ ] misconduct sufficiently demonstrate that he is unfit for employment as a police officer." *Am. Compl.* [#17] ¶¶ 12, 15.  As factual support for this assertion, Plaintiff provides the aforementioned allegations of unpunished misconduct by Defendant Milligan specifically.  *See supra* Section III.D.1.  The Court, therefore, infers that Plaintiff includes these allegations as further support of his claim that Defendant Aurora had or has an unconstitutional policy or custom of not disciplining its officers.  *See Barnes*, 783 F.3d at 1191-92 (explaining that all well-pled facts from the complaint are to be accepted as true and viewed in the light most favorable to the plaintiff).  Thus, Plaintiff's allegation that the APD is fully aware of Defendant Milligan's extensive history of misconduct but has done nothing to prevent future harm plausibly supports the inference that Defendant Aurora has actual notice that its repeated failure to discipline Defendant Milligan was "substantially certain to result in a constitutional violation."  *See Olsen*, 312 F.3d at 1318.

### b.  Deliberate Indifference

Even after sufficiently alleging that Defendant Aurora has notice of the risk posed by its failure to train and discipline, Plaintiff must show that the municipality was deliberately indifferent toward the previous constitutional violations and the likelihood that they would be repeated.  Thus, establishing deliberate indifference to a practice of misconduct requires more than a showing of negligence or recklessness.  *Graber v. City & Cty. of Denver*, No. 09-cv-01029-JLK-MJW, 2011 WL 839283, at *6 (D. Colo. Mar. 7, 2011) (citing *McDowell*

*v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004)), *vacated on other grounds*, 2011 WL 3157038 (D. Colo. July 27, 2011)..

Here, Plaintiff asserts that Defendant Aurora's repeated failure to discipline its officers for their alleged misconduct is indicative of its deliberate indifference to those previous violations and, therefore, its implicit acceptance of such behavior. In order to establish deliberate indifference under this theory, such a policy "must be shown by a clear and persistent pattern." *Id.* (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005)). As noted above in Section III.E.2.a., a conclusory statement to that effect, coupled with specific examples, is sufficient for the purposes of surviving a 12(b)(6) motion. *See Valverde*, 2017 WL 3530282, at *4. Here, Plaintiff states that Defendant Aurora has been deliberately indifferent to the constitutional violations committed by its officers and provides eight examples where that indifference manifested itself through a failure to discipline. Moreover, Plaintiff provides additional factual support relating to Defendant Milligan specifically, alleging that Defendant Aurora repeatedly and "deliberately withheld records, requested pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), of Defendant Milligan's false reporting and excessive force." *Am. Compl.* [#17] ¶ 16. Plaintiff provides two specific instances where Defendant Aurora's failure to produce records allegedly occurred in direct violation of court-ordered subpoenas, eventually leading the judges in each of those cases to vacate the defendants' earlier convictions.[8] *Am. Compl.* [#17] ¶¶

---

[8] In both cases, Defendant Milligan claimed that the criminal defendants, both African-American women, resisted arrest and assaulted him. *Am. Compl.* [#17] ¶¶ 17-19. Both were convicted of these charges by a jury. *Id.* However, upon learning that Defendant Aurora had failed to produce Defendant Milligan's entire personnel file, as requested, the respective state court judges vacated both convictions. *Id.* Additionally, in light of Defendant Aurora's failure to provide exculpatory evidence, charges against a third African-American woman arrested for assault and

17-19. Taking all these allegations as true, the Court finds that Plaintiff has sufficiently alleged, at this early point in the case, a clear and persistent pattern of deliberate indifference by Defendant Aurora toward the repeated constitutional violations allegedly committed by its officers, including Defendant Milligan specifically.

### 3. Causation

Having sufficiently demonstrated that Defendant Aurora has notice and has been deliberately indifferent to an unconstitutional policy or custom, Plaintiff must also show that the purported custom underlying Defendant Milligan's unconstitutional behavior was the "moving force" behind Plaintiff's injury. *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir.1993). In other words, the municipality's custom must be the actual cause of the constitutional deprivation. *Carr*, 337 F.3d at 1231.

The Tenth Circuit has stated that "failure to investigate or reprimand might [ ] cause a future violation by sending a message to officers that such behavior is tolerated." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). This can be true even if the municipality has a facially constitutional policy prohibiting such behavior. *Id.* ("If the city promulgates a constitutional policy but trains its officers to violate that policy, however, a facially constitutional policy will not shield the city from liability and a causal connection could be established."). Thus, Plaintiff's allegations that Defendant Aurora repeatedly failed to discipline its officers, and Defendant Milligan specifically, plausibly support the conclusion that Defendant Milligan believed his unconstitutional behavior would be tolerated. This conclusion, in turn, is sufficient to allege that Defendant Aurora's practice

---

resisting arrest by Defendant Milligan were dismissed. *Id.*

of failing to discipline its officers was a "moving force" behind Plaintiff's injuries.

Accordingly, the Court recommends that Defendant Aurora's Motion [#19] be **denied** as it relates to Plaintiff's fifth claim: Deliberately Indifferent Training, Supervision, and Discipline Resulting in Constitutional Violations.

## IV.  CONCLUSION

Based on the foregoing,

IT IS RESPECTFULLY **RECOMMENDED** that the Milligan Motion [#18] be **DENIED in part** as it relates to Plaintiff's first three claims, **and GRANTED in part**, as it relates to Plaintiff's fourth claim. Thus, the Court recommends that Plaintiff's Racially Biased Policing Claim against Defendant Milligan be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

IT IS ALSO RESPECTFULLY **RECOMMENDED** that the Aurora Motion [#19] be **GRANTED in part,** as it relates to Plaintiff's fourth claim, **and DENIED in part**, as it relates to Plaintiff's fifth claim.  Thus, the Court recommends that Plaintiff's Racially Biased Policing Claim against Defendant Aurora be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  July 23, 2019.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge